The court wishes to acknowledge with great gratitude the efforts and willingness to serve of our judicial colleague from the District Court for the Northern District of Virginia, pardon me, Eastern District of Virginia, located in Northern Virginia, namely Judge Liam O'Grady, sitting on my left, part of our panel here today, sat with the panel yesterday, part of our ongoing program of having district judges and occasionally circuit judges sit with us in our regular sittings. We have five cases before us as a panel this morning. The fifth Bass v. Merit System Protection Board is being decided today on the basis of the briefs without oral argument. On the argument list we'll hear argument first in Conley v. Department of Veterans Affairs, Appeal 7049 from 2007. Mr. Carpenter, welcome back, good morning, please proceed. Thank you very much, Your Honor. May it please the court, Kenneth Carpenter appearing on behalf of Mr. John Conley. Mr. Conley appeals a decision from the court below the United States Court of Appeals for Veterans Claims denying him relief from an appeal from the Board of Veterans Appeals. The issue in this case deals with the difference between a finding of service connection and the right to service connected compensation. Mr. Conley believes that there is a difference between the two and that the first is a predicate for the second and that under 38 U.S.C. section 105A, Congress has provided a method for lowering the burden on the veteran to establish that a condition incurred during service, either a disease or injury, is presumptively service connected. Now, I understand that you're making the argument that either implicitly or explicitly or perhaps some combination, the Veterans Court rendered an interpretation of section 105. The court, well, number one, Mr. Conley presented the issue below and pointed out and the VA conceded that the Board of Veterans Appeals had made a misstatement of the law concerning 105A. Yeah, but I need you to answer my question because it goes to whether we have jurisdiction to deal with one of your contentions. If there's an interpretation by the Veterans Court of a statute, then I would think we plainly do have jurisdiction. If there was not such an interpretation by the Veterans Court, then I think we would not have jurisdiction over that contention. And it is Mr. Conley's position that they did rely on an interpretation of 105A when they found that But whether they relied on an interpretation isn't the same as making one themselves. No, they themselves did not. They relied upon an interpretation of 105A which said that 105A as a statutory presumption would not be outcome determinative in Mr. Conley's request for revision. And that reliance was based on a ruling of a panel of this court in the Shedden case, I would suggest. Well, yes. So all the Veterans Court did is recite a ruling of this court by way of interpreting section 105. No, they prevented Mr. Conley from getting an interpretation of 105A when he specifically raised the misinterpretation that it was not a presumptive statutory presumption for the right to a finding of service connection. But we only have jurisdiction, I suppose, if the Veterans Court rendered an interpretation of a statute or a regulation. And it looks to me like in this case, there was no Veterans Court interpretation of a statute. There was a Veterans Court recital of this court's interpretation of that statute. And it would seem to me that if that's correct, that we don't have jurisdiction over that contention. What is my understanding, Your Honor, that this court's jurisdiction is implicated when the issue is presented below and it is not addressed. And the way in which it was addressed was, in my view, to rely upon a misinterpretation of that statute that the statute did not create an outcome determinative difference in the request for revision. That was Mr. Conley's issue before the VA and before the Veterans Court. It sounds like you disagree with the Shedden case. No, Your Honor. I do not disagree with it. Well, I probably do disagree with the Shedden case. But that was not the issue. The issue was what benefit is derived from that presumption. And this court in Shedden did say that you've got a presumption that the disease or injury was service-connected if it was incurred. That finding was not afforded to Mr. Conley in 1972. And that was the basis for his claim of clear and unmistakable error in requesting revision of the 72 decision. In this case, Mr. Conley had already received in a- How does that constitute an interpretation of 105 by the Veterans Court as opposed to merely an application of an interpretation by this court in Shedden of 105? Because the first we have jurisdiction over and the second we plainly don't have jurisdiction over. Because the Veterans Court's action resulted in a negation of the benefit of the 105A presumption. That may be true. But how does that get you out of the category of applying a statute into the category of interpreting a statute? Because the whole premise for his request for revision was on the basis that the VA had failed to afford him the benefit of that presumption. And the court said that even if the board had misinterpreted that statute as the VA conceded, that it didn't make a difference. Well, it does make a difference, Your Honor, because under the correct interpretation, the appropriate action by the VA in its adjudication in 1972 was to have made a finding that the psychiatric disease noted in service should have been found to have been service-connected. They did not make that finding. Instead, they and the court below relied upon 3.303C of the VA regulations to say that it was a personality disorder and therefore it was not compensable. That effectively negates the benefit of the presumption. That has got to be a misinterpretation of the statute. Because Congress either gave veterans the benefit of that presumption or they didn't. And the VA either afforded them the benefit when they adjudicated in 1972 or they did not. The effect of the court's action below was to rely upon an interpretation that said that even if there was a mistake made, that mistake would not have affected the outcome. That is a misinterpretation of 105A. Because 105A does affect the outcome because he is entitled to the benefit of the presumption that what was incurred in service is entitled to be considered by the VA to have been service-connected. Counsel, is this a separate argument from your clear and unmistakable evidence argument? I'm not quite sure I know what you're asking. The request for a revision was based on an allegation that the VA did not afford in 1972 the benefit of the statutory presumption of service connection. So to the extent that the argument is that under the correct interpretation of 105A, the VA should have made a finding of service connection for what happened in service was to have been found by the VA under the statutory presumption to have been service-connected and they didn't do that. I guess I'm confused. I thought, did you not also argue that there's clear and unmistakable error in the decision not to give? And I guess I thought that I was understanding that as an argument that what occurred in 1972 should have been realized to be depression rather than a personality disorder. Was that not one of the arguments that you're pursuing on appeal? No, not really, Your Honor. The question really is, under 105A, is the VA required to make a finding that a psychiatric disease, regardless of how it's labeled, is entitled to be service-connected? In this case, there were several different diagnoses made during service, which included depression and also included an unstable personality. Well, you say there are several different diagnoses, but it seems that the view held by the VA is that the initial diagnosis of depression wasn't the correct diagnosis, that the personality disorder was the correct diagnosis, at least in 1972 when they were deciding this case. Isn't that right? That's right. And that effectively denies him the benefit of the presumption because even if the diagnosis was personality disorder, that personality disorder is not per se a bar to a finding of compensation. The bar to the benefit of compensation under 3.303C is a pre-existing disability from a personality disorder. There is no such finding in this record that what was noted in service was either a pre-existing personality disorder or that that pre-existing personality disorder had been disabling prior to service. Counsel, is this case in this regard, with your arguments with regard to 1.05 and 3.03C, it seems that you're making the same arguments today you made in the Abbs case a month ago, which we ruled 36th. So I'm just wondering... The difference in that case... I'm trying to appreciate the difference because I'm not getting it. The difference is that Mr. Abbs was not service-connected and Mr. Conley is service-connected. Mr. Conley has successfully reopened and established as a matter of fact and law that what occurred during service is related to his post-service disability. And that his post-service disability is currently diagnosed as major depressive disorder with psychotic features. And he's been service-connected for that disability since 1992. This differs from Mr. Abbs where there was no finding. He has never been determined by the VA to have been service-connected. So we have a different circumstance here. The fact that they decide that he's service-connected now doesn't mean it was wrong in 19... I mean, obviously, it means it was wrong as a matter of fact, but we can't reach that issue. Except that I believe you can, Your Honor, if the court finds, as I believe this court should, that the court below relied on a misinterpretation of 1.05A. That what the VA should have done in the first instance was to make a finding of entitlement to service connection. That he had established the right vis-a-vis the presumption under 1.05A that the psychiatric diseases noted during service, regardless of how they were characterized, were entitled to be found service-connected. But you're assuming that, okay, suppose that someone comes into the VA and they decide he's fractured his leg and then later they decide he's broken his leg. The second diagnosis clearly replaces the first. It's not that he both fractured and broke his leg. In this case, they decided as a matter of fact that first there was evidence of depression and then after further analyses decided, no, it was a personality disorder. And so I don't see how we can read 1.05 when they say, oh, we erred when we said depression, it's really a personality disorder. How we can read 1.05 is guaranteeing him connectedness based on something that at the time they said was erroneous. Because you're dealing with two separate questions. The question of the distinction between personality disorder as compensable and non-compensable is a separate question from the question of service connection. 1.05a does not deal with the right to compensation. 11.10 deals with the right to compensation. 3.303 says... Are you saying any diagnosis made, even if it's later corrected, automatically guarantees you a 1.05 presumption? Any disease or injury. It has nothing to do with diagnosis. Diagnosis is not relevant under 1.05a. What is service-connected is the disease or injury which is incurred in or aggravated during service. But the disease or injury that they believed that he had in 1972 when they made the decision was a personality disorder. And that is specifically carved out. If your problem is that 3.03 is improper in that they carved it out, that ship has sailed. It's too late. And you know that. I understand. You well know that. I was the captain of that ship. Yes. I understand the Terry decision. But the Terry decision is on the question of validity of 3.303c. The question here is what does the veteran get under 1.05a? Does the veteran get the illusion of a presumption or does he get a real presumption? And the reality of the presumption is the presumption deals only with disease or injury. Any disqualification for compensation is a separate issue. The significant difference is that if they had found him to be service-connected for a psychiatric disability other than personality disorder, but that he wasn't entitled to compensation because based on that 72 exam he only had a personality disorder, therefore he couldn't get compensation, as soon as he had a diagnosis for something related to what happened in service that he was service-connected for, he wouldn't have to go back and reestablish service-connectedness, only establish that what he had was related to what he was already service-connected for. Mr. Carpenter, you're down to one minute of rebuttal. You want to save it? I'm sorry, Your Honor. I'll reserve my remaining one minute. Thank you. All right. We'll hear from the government. Do you have jurisdiction over this appeal? Your Honor, I do think the court has raised a good point. We haven't raised jurisdiction in our briefs in this case. Based upon the fact that this court generally has jurisdiction over Q claims, it's unclear based upon oral argument whether or not this is truly a Q claim. I thought you said it wasn't a Q claim. I understand that. That's what I heard at oral argument, and that would present a jurisdictional hurdle to basically the entire argument because in order to be entitled to an earlier effective date, which is what the claimant seeks in this case, the claimant must demonstrate that the 1972 decision was a result of clear and unmistakable error. And if he's not going to demonstrate that this decision was a result of clear and unmistakable error, either based upon the law or facts at the time of the decision, then he would not be entitled to an earlier effective date under the law. Well, I'm interested in whether we have jurisdiction to decide anything here. So to say that he has to lose on the merits doesn't help me. Do we have jurisdiction over his 105 argument or not? If not, why not? Well, Your Honor, again, we haven't raised jurisdiction. The principal reading is because we believe it. I know what's in your brief and what isn't in your brief, but we're not on the briefs anymore. We're here at oral argument. He's perhaps modified his contentions, and I'm trying to get your response. Well, Your Honor, if his argument is that Shen was improperly applied, no, this court would not have jurisdiction. Well, he seems to be arguing, if I understand it, that somewhere in the Veterans Court decision is an interpretation, not an application, but an interpretation of Section 105. Well, the Veterans Court decision- Is that correct or not? No, Your Honor, the Veterans Court decision talks about how 105A did not apply. The court did not apply 105A. It was an error not to apply 105A based upon Shedden and the fact that the 105A presumption only applies to the second of the three elements set forth in Shedden. Well, I still don't understand what your position is. There isn't a legal issue here? There isn't a statutory interpretation issue here? Based upon oral argument, I would say no, there isn't. Well, I'm not worried about the oral argument exactly. I'm trying to figure out, when you look at the decision, is there an interpretation of a statute embedded in the Veterans Court decision or not? I do not believe so, Your Honor. Why not when they discussed 105? Well, if it is sufficient to have a discussion of statute by simply citing to a statute, then yes, this court would have jurisdiction. However, if it is relying upon an actual interpretation of the statute, then this court would not have jurisdiction because, again, they determined that that statute was not applicable under Shedden. So, counsel, the Veterans Court doesn't always put it in bold and all caps for us. We're interpreting 105. And sometimes, even though it's application of law to fact, which we have no jurisdiction over, it's clear from an application of law to fact that they are, in fact, misinterpreting a regulation or a statute. That's the only way they could possibly apply it this way. So this is, I think, something that I've seen a lot of difficulty deciding, which is when is it an interpretation issue, which we can, of course, review, and when is it application of law or fact, which we can't. So can you help me decide where this case falls in that gray area? Your Honor, I concede that I would have a bit of difficulty from the Veterans Court opinion determining exactly on a bright line basis whether it is a matter of interpretation or clearly a matter of interpreting a statute. The principal argument, I would say, for this court not possessing jurisdiction would be both that the Veterans Court focused upon this court's ruling in Shedden and also that it was determining that 105A did not apply as part of the Shedden factors. Now, if the decision that 105A does not apply is sufficient to constitute a statutory interpretation and not an application of law to fact and not an application of law to the case, then on that basis, this court would have jurisdiction. But unfortunately, you just restated my question. You said if it's sufficient, then this court wouldn't have jurisdiction, but you actually didn't tell me whether it is or isn't, and that's what I'm trying to elicit from you. I apologize if I misunderstood the court's question. But it appears from the government's perspective that what they were simply saying is that 105A does not apply and this court, therefore, and because they have decided that 105A does not apply, therefore, it is not interpreting a statute, this court would not have jurisdiction. If we turn... But wouldn't you agree that there could be a circumstance where the Veterans Court first interpreted some language in a statute and then based on that interpretation said that statute doesn't fit this case, is irrelevant to this case? Yes, Your Honor, there could be those cases, but we don't see that in the Veterans Court's opinion here. Why is that? Well, we don't see them actually interpreting language in the statute. What they find is they read this court's opinion in Shedden about how the presumption should be applied and when a presumption of 105A applies, and they do not find that that particularly, that the 105A presumption applies in this case based upon Shedden, based upon the facts of the case. It's not based upon an interpretation of the statute itself. But you would also agree, wouldn't you, when someone says that statute doesn't apply here, isn't that an interpretation of the statute? To come to the conclusion that it doesn't apply means that you've concluded that this case and its subject matter is not within the purview of that statute and, therefore, you are necessarily having to make some sort of interpretation. Well, it's where you get into one of the difficulties because almost every case is going to involve some application of facts. And when you're looking actually at the facts, this court obviously doesn't have jurisdiction of the application of law to facts and just pure legal questions. Does that mean that to be within our jurisdiction, the analysis of the statute would have to be generic and divorced from the particular facts of the case at hand? Not entirely divorced because if you entirely divorce it, it's unclear exactly what sort of opinion you would have in the VA case. It depends upon the measure of connection of the opinion to the facts or the notation of the facts to the opinion. Unfortunately, I'm not aware of a decision which provides a clear and bright line on this. If there isn't a bright line, what is there that you can suggest that's helpful? You seem to say if they interpret language, that probably means it is within our jurisdiction. Okay, that's a fairly simple test but not very often going to be helpful because it doesn't occur, by my recollection, very often. Is there any other criterion that you can suggest other than where they construe particular words or phrases from the text of the statute? Your Honor, no, I do not have another particular test that I can provide. All right, now if we have jurisdiction, what's your answer on the merits? Well, Your Honor, the claimant has asserted that the 105A presumption entitles him to presumption that a disease or injury service connected. However, in this case, the issue is whether or not he had a disease or injury within the meaning of that statute, not within the meaning of 105A. And so, in this particular case, 105A presumption does not provide that a particular condition is presumed to be a disease or injury within the meaning of the statute. 105A is only a presumption which entitles you to a presumption of service connection for a disease or injury which you've raised. So the problem here is there's no disease or injury? Yes, Your Honor, that's correct. And that's why 105 doesn't help him in this case? That is correct, Your Honor. He seems to argue that there should have been a diagnosis of psychiatric disease, a recognized psychiatric disease, because there was ample evidence, both from the Army records and from the VA records, that the veteran at the time in question had such a psychiatric disease. Well, Your Honor, ample evidence is not sufficient on a clear and unmistakable error claim. Ample evidence doesn't get you to having a clear and unmistakable error. An error needs to be undebatable to have a clear and unmistakable error. And in this particular case, the records do support the 1972 diagnosis of depression. 127 and 128 of the administrative record, and 151 and 154 of the administrative record, both full psychiatric evaluations, Mr. Connolly determined. This is a little disturbing. You're saying, well, it's clear as a bell that in 72 he had a standard psychiatric disease properly diagnosed, but only about a year earlier he had a mere congenital personality disorder, which is not a psychiatric disease, and therefore he doesn't deserve any compensation. That's a little hard for me to reconcile those two things where the time period is so short. Well, Your Honor, initially in 1971, when he was first admitted to the hospital, the diagnosis, his admitting diagnosis, without a full psychiatric examination, was that he had a reaction depressive acute, but they had noted at the time a premorbid personality and disposition, and this is at 135 of the record. And they also noted the degree of the resultant psychiatric impairment was unspecified. When he actually was subject to two different examinations by two different psychologists, that's when they determined. Where are we now? Are we still in the Army, or are you talking about the VA? We're still in the Army. Okay. And the initial June 1971, June 18th, we're looking at 135 of the record, is when they note that he has a depressive disorder. On July 28, 1971, when he's still, when he's at Fitzsimmons, and he obtains a full psychiatric diagnosis, that's where they first make the determination that he's suffering from emotionally unstable personality with strong passive-aggressive features. And they note that that's manifested by, among conditions, the depression, which we see later on. So the initial diagnosis in 1971, June 1971, by July, after a full psychiatric examination, they note is one of the manifestations of what ends up his personality disorder. Also when he's post-service. Where in the record are you on that one? I'm right now at 128 in the record. That is the Fitzsimmons, July 28, 1971 diagnosis. But it doesn't say what all, it doesn't only say what you just said, it said, counsel, which is why I wanted to go to, because I remembered this. It says, final diagnoses, emotionally unstable, personality with strong passive-aggressive features, chronic severe, manifested by emotional liability, immaturity, three suicidal gestures, depression, and anxiety. That's correct, Your Honor. Those are the manifestations of his emotionally unstable personality with strong passive-aggressive features, chronic severe. Okay, counsel, if he's manifested, does it matter what the source is of his depression? Clearly they're saying he has depression. It may be caused by his personality disorder. But is that relevant? I mean, if I have a broken leg, does it really matter exactly how I broke it? It's still broken. Well, the broken leg analogy doesn't work very well, because depression can be both a symptom and a diagnosis. There can be, under the VA regulations and the APA, American Psychological Association guidelines, there are specific diagnosis for depression, and there are various kinds of depression. I don't see anything in 105 that says diagnosis. I don't see anything in 303 that says diagnosis. Are you saying he's not diagnosed with depression? It seems to me that this final diagnosis says he's got these things, and how are they determining it? Because of his depression, anxiety, and suicidal gestures. How many people with personality disorders do you know that are suicidal? I mean, come on, obviously. Actually, Your Honor. Okay, don't answer the question. We may need more CSOs in the courtroom in a minute. But, no, clearly the government has ultimately concluded that he was depressed. I mean, and, you know, you did the right thing and gave him the compensation, at least from 1992 going forward, that he clearly deserves. And what we're really here over is looking back. That's why I thought this was a huge case to begin with, and Mr. Carpenter suggested not so much. It's really an interpretation case because I thought why we were here today was to figure out whether or not the government admits it made an error. In 1972, he was depressed. They've admitted that. The question is, is it clear and unmistakable? And that's the way I was analyzing this case. Is that the way you were analyzing it when you came in, too? Well, Your Honor, the point is that there's differences. Just saying depressed is not sufficient. Well, but you agree the government has admitted that it made an error and that he was, in fact, depressed in 72, right? Otherwise, why else would they be giving him, in 1992, going forward, the benefit? Because it's a separate kind of depression. I mean, there is no indication in the 1971 or 1972 records that he suffered from the condition that he was determined to have in 1992, which is a major depressive disorder with psychotic features, which is a specific psychological diagnosis. In many ways, this is like the Dye case, where in Dye, we had notations in the record of arthritis, and we also had arthritis, which he was later diagnosed with. Those are two different conditions because there are different kinds of arthritis, just like there are different kinds of psychological conditions. But why would the government be compensating him, starting in 1992, for depression? He's been out of the service for how many years? Your Honor, that depression can still be service-connected if manifested at a later date. Wait, let me get this straight. He was depressed while he was in the service. We all agree with that. He was depressed while he was in the service. All the notations indicate this. So then 20 years later, he's depressed again, and you're telling me it has something to do with when he was in the service, but it's not the same depression. Yes. It's a psychotic depression, which is a very different manifestation from simply being depressed. A major depressive disorder with psychotic features, we're talking about something that's listed separately under the VA regulations as a separate condition that the American Psychiatrist... If it was the same depression, would he be entitled to benefits back to 1972? If your premise that you're articulating right now, that it's a separate depression, is defeated in some way, would he be entitled to the benefits going back to 1972? Does your case standard fall on that issue? No, because the 1972 decision would need to be the result of clear and unmistakable error for him to be entitled to an earlier effective date. What about jurisdiction on that issue as presented in this case? If the question before us is, did the VA or the board commit clear and unmistakable error in this case, do we have jurisdiction to second-guess the assessment of these various psychiatric-type reports? I would say this court does not have jurisdiction over factual-type issues. Well, under clear and unmistakable error, aren't all the issues factual? At least in this case. Maybe there's some hypothetical case where they'd be legal, but it seemed to me that you would have to... In order to find clear and unmistakable error in this case, you would have to say that the Veterans Board grossly misread the psychiatric documents, and that it was so gross that any responsible board members would have had to come out with the opposite result than the actual result imposed. That sounds heavily factual to me. It could be heavily factual, although acute claims can also be based upon... Well, I'm not talking about acute claims in general. In this case, this acute claim, is it factual outside of our jurisdiction or somehow inside our jurisdiction? To the extent we're not talking about... Yes, actually, I would say that the factual questions that were presented by Judge Moore are questions outside of this court's jurisdiction. Well, is there any question that's inside this court's jurisdiction relating to whether Q occurred in this man's case? If there was a legal question with regards to 105A, yes, there would be. But we have previously discussed that. All right, let's hear Mr. Carpenter's rebuttal. Two minutes, Mr. Carpenter. One reserved, one gratis. Mr. Carpenter, I imagine... Two minutes. I imagine you might start by pointing us to page 220 of the record, which indicates that in the... that the examiner concluded that the depression he had in the 90s is the same depression he had in the 70s, contrary to the government's argument. Is that someplace you might start? Well, yes, Your Honor. It seems to me that what the government is doing here is trying to pretend that there is a difference... that they have the right to distinguish between what happened after service and what happened in service. There are really two separate sequential steps. The first is what happened in service. Was there or wasn't there a disease or injury? That is service connection. There was a disease in this case, a psychiatric disease, regardless of what the label is. It happened during his period of service. What's your basis of saying there was a psychiatric disease as distinct from the diagnosis of personality disorder only? Because even if that diagnosis of personality disorder is accepted as what he was suffering from during service, that is still a psychiatric disease. Well, not according to the regulation. No. According to the regulation, what is non-compensable is a pre-existing disability from a personality disorder. The premise of the regulation is personality disorders are always pre-existing because they're either congenital or developmental. The regulation says that. But what the regulation... Therefore, necessarily, he had the personality disorder the day before he entered the Army. But there's no evidence to support that and there's no medical statement. Definitional. All personality disorders are pre-existing because they're deemed by the regulation to be congenital or developmental. And that's entirely inconsistent with the VA General Counsel's opinion that says even if you have a pre-existing congenital defect, such as retinitis pigmentosa, and it becomes aggravated during service, you're entitled to compensation. That is in our reply brief. That is a binding opinion of the VA General Counsel going back to 1985, which explains the fallacy in that argument. Their regulation, by their own interpretation of their regulation, does not say that. It is not an absolute bar to compensation. It is a bar to compensation under specifically defined circumstances. And those circumstances were not present in this record in 1972. What was present in this record was evidence that he had a current disability. At page 89 of the record, the conclusion of the 1972 exam, which was the basis for the decision in this case that is being contested, says that this time his personality features, not his personality disorder, his personality features and adjustment problems seem to constitute a mild disability for him, primarily in terms of him getting along with others, especially regarding employers. Now, that means he had a disability at that time by the VA's own medical evidence, even though on the preceding page there is a diagnosis of personality disorder, passive-aggressive personality. The fact is what Mr. Conley was entitled to and did not receive was the benefit of the presumption that the psychiatric disease noted in service was entitled to a presumption of service connection. That would have put him in a different position when the VA made its fact-finding in 1972, had they applied that presumption. What the court below said at the bottom of page 5 of its decision continuing to the top of page 6 was is that the presumption of 105A only satisfies what it referred to as Kaluza element 2, parenthetically, incurrence or aggravation during service. And that is not outcome determinative, but it is outcome determinative in this case. And the question of law that is presented in this Q claim and in this appeal is, what is the benefit that is derived from that 105A presumption? All right, I think we have your position. You've given us lots of extra time, so we'll take the case under advisement. Thank you very much. Thanks to both counsel. The next argument is in Appeal 1014 from 2008, Alan Block v. Hugh Dillon.